**B. John Casey**, OSB No. 120025
Email: john.casey@klgates.com
K&L GATES LLP
One SW Columbia Street
Suite 1900
Portland, OR 97258
Telephone: 503.228.5716
Facsimile: 503.248.9085

**Jerry S. McDevitt** (*pro hac vice*)
Email: jerry.mcdevitt@klgates.com
**Curtis B. Krasik** (*pro hac vice*)
Email: curtis.krasik@klgates.com
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: 412.355.8696
Facsimile: 412.355.6501

*Attorneys for Defendant World
Wrestling Entertainment, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | | |
|---|---|---|
| WILLIAM ALBERT HAYNES III, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No: 3:14-cv-01689-ST |
| Plaintiffs, | ) ) ) | DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS |
| vs. | ) ) | **ORAL ARGUMENT REQUESTED** |
| WORLD WRESTLING ENTERTAINMENT, INC., | ) ) ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT ...............................................................................................................4

   I.    Despite Haynes' Improper Re-Characterization of His Amended Complaint, All of His Claims Are Time-Barred..............................................................4

       A.    ORS 12.110(4) Does Not Apply ....................................................5

           1.    ORS 12.110(4) does not apply to Haynes' "Medical Negligence" claim........................................................5

           2.    ORS 12.110(4) does not apply to Haynes' Other Counts..............6

           3.    Haynes has not alleged any conduct within the five-year repose period of ORS 12.110(4) that could toll his claims.............8

       B.    Even If ORS 12.110(4) Did Apply to Haynes' "Medical Negligence" Claim, the Repose Period in ORS 12.115 Operates Concurrently by Providing an Ultimate Ten-Year Cutoff Period ........................................10

       C.    Haynes Cannot Avoid the Ten-Year Repose Period By Arguing an Unpled Claim ..............................................................................11

       D.    The Statute of Repose in ORS 12.115(1) Bars All of Haynes' Claims, and No Tolling Doctrine is Available ........................................13

   II.    Haynes Has Not Adequately Pled Either of His Two Proffered Tolling Doctrines ...............................................................................................14

       A.    Haynes Does Not Allege a Single Fact Specific to Him Showing Why He Failed to Discover His Decades-Old Injury Earlier .............................14

       B.    Haynes Has Failed To Plead Fraudulent Concealment with Particularity........................................................................17

   III.    Haynes' Substantive Counts Independently Fail to State a Claim .......................21

       A.    Medical Monitoring Is Not a Recognized Cause of Action or an Appropriate Remedy..........................................................21

       B.    Haynes Cannot Avoid Dismissal with Prejudice by Voluntarily Abandoning His Claims for Strict Liability and Declaratory/Injunctive Relief........................................................................22

       C.    Haynes Has Not and Cannot Allege a Physician-Patient Relationship to Sustain His Medical Negligence Claim ................................22

       D.    Haynes Has Not Pled His Fraud and Misrepresentation Claims with Particularity........................................................................23

           1.    There is no reason why the relaxed particularity pleading

**K&L GATES LLP**
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

standard should apply to Haynes' claims......................................24

      2.    The Amended Complaint falls well short of complying with Rule 9(b) ....................................................................................25

      3.    Haynes has not alleged a special relationship creating a duty to speak ....................................................................................26

IV.    This Court Lacks Personal Jurisdiction Over WWE .............................28

    A.    Plaintiff Has Failed To Establish General Jurisdiction...........................29

    B.    Plaintiff Has Failed To Establish Specific Jurisdiction ..........................31

CONCLUSION.............................................................................................................35

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Advice Co. v. Novak*,
No. C-08-1951 JCS, 2009 WL 210503 (N.D. Cal. Jan. 23, 2009) ...................................30, 32

*Ajinomoto N. Am., Inc. v. Pine Valley, Inc.*,
No. 3:14-cv-00293-BR, 2014 WL 3349649 (D. Or. July 8, 2014) ......................................33

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
1 F.3d 848 (9th Cir. 1993) ...................................................................................................28, 29

*ASARCO, LLC v. Union Pac. R. Co.*,
765 F.3d 999 (9th Cir. 2014) ...................................................................................................18

*Asghari v. Volkswagen Grp. of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013) ....................................................................................25

*Bancorp Leasing & Fin. Corp. v. Agusta Aviation Corp.*,
813 F.2d 272 (9th Cir. 1987) ...................................................................................................16

*Bates v. Bankers Life & Cas. Co.*,
993 F. Supp. 2d 1318 (D. Or. 2014) ...........................................................................29, 30, 31

*Benson Tower Condo. Owners Ass'n v. Victaulic Co.*,
22 F. Supp. 3d 1126 (D. Or. 2014) ....................................................................................27, 28

*Bojorquez v. Wells Fargo Bank, NA*,
No. 6:12-CV-02077-AA, 2013 WL 6055258 (D. Or. Nov. 7, 2013) ...................................5, 25

*Cereghino v. Boeing Co.*,
826 F. Supp. 1243 (D. Or. 1993) .............................................................................................14

*Conerly v. Westinghouse Elec. Corp.*,
623 F.2d 117 (9th Cir. 1980) ...................................................................................................18

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*,
858 F.2d 499 (9th Cir. 1988) ...................................................................................................19

*Coppinger-Martin v. Solis*,
627 F.3d 745 (9th Cir. 2010) ................................................................................................8, 20

*Curran v. Jerome Hotel*,
1994 WL 250007 (9th Cir. Jun. 9, 1994) ................................................................................29

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

*Dole Food Co., Inc. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ...............................................................................34

*Dynamic Software Servs. v. Cyberbest Tech., Inc*,
  No. C-13-04217 DMR, 2014 WL 3373924 (N.D. Cal. July 9, 2014) ..............................30, 32

*Emery v. BioPort Corp.*,
  273 F. App'x 694 (9th Cir. 2008) ...........................................................................29

*Estate of Amarov v. City of Oakland*,
  653 F.3d 808 (9th Cir. 2011) ...............................................................................20

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...................................................................24

*Farmer Boys' Catfish Kitchens Int'l, Inc. v. Golden West Wholesale Meats, Inc.*,
  18 F. Supp. 2d 656 (E.D. Tex. 1998) ......................................................................31

*Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*,
  828 F.2d 1439 (9th Cir. 1987) ...............................................................................33

*Fujitsu-ICL Systems, Inc. v. Efmark Serv. Co. of Ill., Inc.*,
  No. 00-CV-0777 W(LSP), 2000 WL 1409760 (S.D. Cal. June 29, 2000) ...........................32

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) ...........................................................................29, 31

*Guerrero v. Gates*,
  442 F.3d 697 (9th Cir. 2006) ...............................................................................19

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ........................................................................28, 29, 30

*In re Nat. Football League Players' Concussion Injury Litig.*,
  No. 2:12-MD-02323-AB, – F. Supp. 3d –, 2015 WL 1822254 (E.D. Pa. Apr.
  22, 2015) ...............................................................................................12, 13

*J & J Sports Prods., Inc. v. Rivera*,
  No. 6:13-cv-01996-AA, 2014 WL 2809844 (D. Or. June 18, 2014)...................................34

*Jenkins v. Cnty. of Riverside*,
  398 F.3d 1093 (9th Cir. 2005) .......................................................................13, 21, 22

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .........................................................................25, 26

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

*King v. American Family Mut. Ins. Co.*,
   632 F.3d 570 (9th Cir. 2011) ........................................................................30

*Mitchell v. Greenough*,
   100 F.2d 184 (9th Cir. 1938) ...................................................................15, 17

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ........................................................................24

*Morton v. Mancari*,
   417 U.S. 535 (1974).......................................................................................11

*Ocean SW, Inc. v. Canam Pet Treats, Inc.*,
   No. 14-cv-2059-BAS, 2015 WL 2180492 (S.D. Cal. May 7, 2015) .................31, 32

*Oil Pad Solutions, LLC v. Parsons*,
   No. 3:12-cv-01917, 2013 WL 1946743 (D. Or. May 8, 2013)............................31

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
   52 F.3d 267 (9th Cir. 1995) ...........................................................................31

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ......................................................................30

*Pesnell v. Arsenault*,
   543 F.3d 1042 (9th Cir. 2008) ......................................................................18

*Philpott v. A.H. Robins Co.*,
   710 F.2d 1422 (9th Cir. 1983) ......................................................................20

*Rivera v. Perit Sons Farms, Inc.*,
   735 F.3d 892, 902 (9th Cir. 2013) ................................................................19

*Rutledge v. Boston Woven Hose & Rubber Co.*,
   576 F.2d 248 (9th Cir. 1978) ...............................................................18, 19, 20

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ........................................................................24

*Schneider v. California Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998) ....................................................................5, 25

*Schroll v. Plunkett*,
   760 F. Supp. 1385 (D. Or. 1991) *aff'd*, 932 F.2d 973 (9th Cir. 1991)............32, 34

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ........................................................................29

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

*SD Holdings, LLC v. Aircraft Owners & Pilots Ass'n, Inc.*,
    No. 3:13-cv-01296-AC, 2014 WL 3667881 (D. Or. July 22, 2014)......................................30

*Silicon Economics, Inc. v. Financial Accounting Found.*,
    No. 10-cv-01939-LHK, 2010 WL 4942468 (N.D. Cal. Nov. 24, 2010)...........................30, 31

*Sonsteng v. Dominican Sisters of Ontario, Inc.*,
    06-476-SU, 2007 WL 2984002 (D. Or. Oct. 9, 2007)....................................................8, 9, 17

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) ....................................................................13, 21, 22

*Terracom v. Valley Nat'l Bank*,
    49 F.3d 555 (9th Cir. 1995) ........................................................................................34

*Traeger Pellet Grills, LLC v. Deadwood Biofuels, LLC*,
    No. 3:11-cv-01221-JE, 2012 WL 4040211 (D. Or. June 21, 2012) ...............................29, 30

*TRM Corp. v. Paulsell*,
    No. CV-02-215-ST, 2002 WL 31549112 (D. Or. June 4, 2002) ................................... *passim*

*Verd v. I-Flow, LLC*,
    No. 3:11-CV-00677-AA, 2013 WL 2178081 (D. Or. May 14, 2013).................................7, 8

*Volk v. D.A. Davidson & Co.*,
    816 F.2d 1406 (9th Cir. 1987) ........................................................................................18

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ........................................................................................18

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)........................................................................................32

*Yahoo, Inc. v. La Ligue Contre*,
    433 F.3d 1199 (9th Cir. 2006) ........................................................................................32

**State Cases**

*Beals v. Breeden Bros.*,
    113 Or. App. 566, 833 P.2d 348 (1992)........................................................................13

*Curtis v. MRI Imaging Servs. II*,
    327 Or. 9, 956 P.2d 962 (1998) ........................................................................................22

*DeLay v. Marathon LeTourneau Sales & Serv. Co.*,
    291 Or. 310, 630 P.2d 836 (1981) ........................................................................................10

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

*Doe v. Am. Red Cross*,
128 Or. App. 38, 874 P.2d 828 (1994) *aff'd*, 322 Or. 502, 910 P.2d 364 (1996)....................6

*Duncan v. Augter*,
286 Or. 723, 596 P.2d 555 (1979) ..............................................................5, 6, 8, 10

*Gaston v. Parsons*,
318 Or. 247, 864 P.2d 1319 (1994) .....................................................................9, 10

*Hoffman v. Rockey*,
55 Or. App. 658, 639 P.2d 1284 (1982)...................................................................5, 6

*Johnson v. Multnomah Cnty. Dep't of Cmty. Justice*,
344 Or. 111, 178 P.3d 210 (2008) .............................................................................17

*Josephs v. Burns*,
260 Or. 493, 491 P.2d 203 (1971) *overruled on other grounds by Smothers v.
Gresham Transfer, Inc.*, 332 Or. 83, 23 P.3d 333 (2001)....................................5, 6, 13

*Lowe v. Philip Morris USA, Inc.*,
344 Or. 403, 183 P.3d 181 (2008) ........................................................................21, 22

*Mead v. Legacy Health Sys.*,
352 Or. 267, 283 P.3d 904 (2012) ...............................................................................22

*Piehl v. Dallas Gen. Hosp.*,
280 Or. 613, 571 P.2d 149 (1977) ................................................................................22

*Skuffeeda v. St. Vincent Hosp. & Med. Ctr.*,
77 Or. App. 477, 714 P.2d 235 (1986)....................................................................6, 7, 8

*Sullenger for Sullenger v. Setco Nw., Inc.*,
74 Or. App. 345, 702 P.2d 1139 (1985) .......................................................................23

*Urbick v. Suburban Med. Clinic, Inc.*,
141 Or. App. 452, 918 P.2d 453 (1996).........................................................................9

**State Statutes**

ORS 12.115...................................................................................................................10

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

## INTRODUCTION

In the wake of concussion-related lawsuits filed against the NFL, NHL, and NCAA, Haynes' attorneys solicited former wrestlers to bring similar charges against WWE. Unable to find a plaintiff who recently wrestled for WWE, they launched this lawsuit on behalf of a plaintiff who had a brief two-year stint with the WWE that ended nearly 30 years ago. In discussions between the parties, WWE pointed out the obvious: every claim in the original Complaint was time-barred under Oregon's ten-year period of ultimate repose in ORS 12.115(1).

In response, Haynes amended his Complaint, adding a new "medical negligence" claim (Count V), while remarkably not withdrawing any other. In his Opposition, Haynes improperly attempts to <u>further</u> amend his Amended Complaint by way of argument instead of factual allegation. Whereas Haynes' Amended Complaint was unquestionably premised on his theory that the WWE concealed and failed to disclose publicly known concussion risks to wrestlers (*see* Am. Compl. ¶ 1), the theory he espouses in his Opposition is that the WWE – an entertainment company, not a medical care provider – failed to provide proper medical care to wrestlers (*see* Opp. p. 1). Haynes goes as far in his Opposition to argue that WWE committed some unpled tort when it began a program in 2006 to help former wrestlers who needed drug or alcohol treatment. This desperate allegation contends that it was somehow wrongful for WWE to do so, some 20 years after Haynes last performed, because WWE did not discuss alleged concussion risks when it offered such help to those in need.

Haynes' amendment tactic is now clear: he is attempting to circumvent the ten-year repose period which he completely ignored when he brought his original Complaint. Specifically, Haynes hopes that, by adding a "medical negligence" claim, shifting themes in his Opposition, and attempting to add new "facts" by way of his Opposition, <u>all</u> of his claims would be governed by the medical malpractice statute of limitations and repose, ORS 12.110(4), which, unlike ORS 12.115(1), has a tolling mechanism.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

None of Haynes' attempts to revise his theory of relief can save his claims. **_First_**, Haynes expressly denies that his medical negligence claim in Count V is a medical malpractice claim, Opp. at 26 (describing his claim as "ordinary negligence, not malpractice"), and thus Oregon's medical malpractice statute, ORS 12.110(4), does not apply even to his new Count V. It certainly does not apply to any of his other claims carried over from the original Complaint. His other claims are all premised on his "failure to disclose concussion risks" allegations. Claims grounded in these allegations are governed by both ORS 12.110(1) and ORS 12.115, <u>not</u> ORS 12.110(4).

**_Second_**, even if ORS 12.110(4) governed Haynes' medical negligence claim in Count V, that claim still remains untimely. ORS 12.110(4) contains both a two-year limitations period, <u>and</u> a five-year repose period for medical malpractice claims. To utilize the tolling mechanism of ORS 12.110(4), Haynes must allege fraud, deceit or misrepresentation <u>within</u> the five-year repose period, which here must be between 1988 (when Haynes left the WWE) and 1993. Haynes has not alleged a single fact charging WWE with "fraud, deceit or misleading misrepresentation" <u>within</u> that five year timeframe. Moreover, a plaintiff must allege misconduct within that five year period that is <u>above</u> <u>and</u> <u>beyond</u> the conduct underlying his substantive claims to invoke tolling under ORS 12.110(4). Haynes, who did not dispute this principle in his Opposition, has offered no such allegations here. Thus, even if ORS 12.110(4) did apply, Haynes cannot escape the repose period in ORS 12.110(4).

**_Third_**, even if ORS 12.110(4) applies to Haynes' medical negligence claim, the ten-year period of ultimate repose in ORS 12.115(1) operates <u>concurrently</u> with the medical malpractice statute, establishing an absolute ten-year limit on medical malpractice claims. No less than <u>three</u> Oregon Supreme Court cases have so stated, and Haynes fails to provide a single citation that holds otherwise. Critically, Haynes does not dispute that, if ORS 12.115(1) applies, it applies to all of his claims and no tolling doctrine is available to revive <u>any</u> of his claims. The Court, therefore, need not proceed any further.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

**Fourth**, Haynes' fraud claim also fails because Haynes has not alleged a single fact to support either of his two proffered tolling doctrines to avoid the even shorter regular limitations period.[1] Tolling based on the discovery rule and fraudulent concealment principles requires affirmative allegations justifying Haynes' delayed filing. He alleges none. He does not allege when he discovered his injury, how it was discovered, or any diligence on his part to discover it earlier. He does not allege any of the neutral facts – who, what, when, where, etc. – that would support tolling based on fraudulent concealment. Instead, Haynes repeatedly hides behind generalized allegations having nothing to do with him specifically and that do not explain why he filed this lawsuit nearly 30 years after he stopped wrestling for WWE. As this Court has explained, in a decision Haynes ignores, more is required to justify such an egregious delay. *TRM Corp. v. Paulsell*, No. CV-02-215-ST, 2002 WL 31549112, at *2 (D. Or. June 4, 2002) (a plaintiff "must allege facts justifying [his] delay").

**Fifth**, in addition to being time-barred, none of the counts states a claim for relief. After twice pleading claims for strict liability and declaratory and injunctive relief, Haynes now agrees to voluntarily dismiss them without even attempting to justify why such claims were asserted in the first place.[2] Further, he does not allege any type of physician-patient relationship with WWE to support a medical negligence claim, and in fact alleges that WWE never treated him. He all but concedes that his medical monitoring claim is not recognized in Oregon. His remaining claims, based on fraud and misrepresentations, are not pled with particularity, and Haynes has not and cannot allege a special relationship with WWE creating a duty to speak.

---

[1]    As noted, Haynes does not dispute WWE's argument in its opening brief that ORS 12.115 applies to all of Haynes' claims, including Count I for fraud. *See* Doc. 44, p. 24. Haynes has thus waived any argument to the contrary. If the Court agrees, it is not then necessary to determine whether Haynes' fraud claim is also barred by the shorter limitations period.

[2]    Defendants explained the futility of these claims when the parties met and conferred in December 2014. Haynes inexcusably re-asserted the same claims, requiring WWE to brief the multiple reasons requiring their dismissal.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

*Finally*, the Court lacks personal jurisdiction over WWE. Haynes presents no proof of "substantial" or "continuous and systematic" business activities of WWE to justify the exercise of general jurisdiction over WWE. Nor has Haynes met his burden to establish specific jurisdiction over WWE for each of his claims.

## ARGUMENT

I. **Despite Haynes' Improper Re-Characterization of His Amended Complaint, All of His Claims Are Time-Barred**

After being told in December that Oregon's statute of ultimate repose, ORS 12.115, was fatal to Haynes' original Complaint, his lawyers retreated to the drawing board in a transparent attempt to avoid that statute.[3] First, in their Amended Complaint, they concocted a new "medical negligence" claim in Count V without alleging any physician-patient relationship with WWE. Having done so, and having seen WWE's brief exposing that tact as meritless, their Opposition now tries to completely reframe Haynes' theory of liability – from concealing and failing to disclose publicly available concussion information to failure to provide adequate healthcare. *Compare* Am. Compl. ¶ 1 ("WWE has engaged in a campaign of misinformation and deception to prevent its wrestlers from understanding the true nature and consequences of the injuries they have sustained.") *with* Opp. at 1, 13 ("WWE freely and voluntarily supplied medical care for wrestlers during matches, [but did not] provid[e] reasonable medical care . . . . Mr. Haynes' claims rest on WWE's failure to assess, diagnose, and treat concussions during and after matches."). Haynes also argues in his Opposition that WWE committed some unpled tort to Haynes when it instituted a free drug counseling program to former wrestlers in 2006. Opp. at 18.

---

[3] In a footnote, Haynes takes issue with statements made by WWE's counsel to the media. Opp. at 3, n.1. WWE was forced to defend itself in the media only after Haynes' lawyers: (i) engaged in a misleading marketing campaign to fish for plaintiffs; (ii) filed numerous lawsuits against the WWE (including this case) making false, scandalous and outrageous allegations having nothing to do with the claims for relief, which were designed to, and did, garner significant media attention; and (iii) then compounded the problem by repeating many of these false allegations to a number of media outlets in interviews or personal appearances.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

A plaintiff cannot constructively amend his complaint in an opposition to a motion to dismiss. *See, e.g., Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) ("The 'new' allegations contained in the [plaintiffs'] opposition motion, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Bojorquez v. Wells Fargo Bank, NA*, No. 6:12-CV-02077-AA, 2013 WL 6055258, at *4 (D. Or. Nov. 7, 2013) ("Thus, in evaluating defendants' motions, this Court disregards the allegations first articulated in plaintiffs' response."). Accordingly, the Court cannot consider these unpled facts and claims.

Haynes nonetheless hopes that this improper legal maneuvering means that that the medical malpractice statute of limitations, ORS 12.110(4), which has a tolling mechanism that ORS 12.115 does not, now governs <u>all</u> of his claims. As set forth below, these tactics do not change the result here – all of Haynes' claims remain time-barred.

## A. ORS 12.110(4) Does Not Apply

Haynes now asserts that all of his remaining claims are governed by Oregon's medical malpractice statute of limitations, ORS 12.110(4). Opp. at 13–14. Haynes is wrong. The medical malpractice statute does not even apply to his newly-minted medical negligence claim in Count V, let alone to his other claims.

### 1. ORS 12.110(4) does not apply to Haynes' "Medical Negligence" claim

Oregon courts are clear that ORS 12.110(4) is a <u>medical</u> <u>malpractice</u> statute of limitations. As one Oregon court stated, "ORS 12.110(4) relates specifically to medical malpractice claims." *Hoffman v. Rockey*, 55 Or. App. 658, 662, 639 P.2d 1284 (1982); *see also Duncan v. Augter*, 286 Or. 723, 729, 596 P.2d 555 (1979) (en banc) ("The initial purpose of [this statute] as we have said, was to roll back in some degree the exposure of the medical profession to malpractice actions after a time when the circumstances of the alleged malpractice have become difficult to litigate."); *Josephs v. Burns*, 260 Or. 493, 499, 491 P.2d 203 (1971) ("ORS

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

12.110(4) . . . contain[s] an over-all limit for malpractice cases[.]") *overruled on other grounds by Smothers v. Gresham Transfer, Inc.*, 332 Or. 83, 23 P.3d 333 (2001); *Skuffeeda v. St. Vincent Hosp. & Med. Ctr.*, 77 Or. App. 477, 484, 714 P.2d 235 (1986) ("The legislature enacted the five-year limitation period to protect medical practitioners from long delayed malpractice actions."). ORS 12.110(4) does not apply even to Haynes' newly asserted "medical negligence" claim in Count V. Haynes explicitly admits in his Opposition that this claim is "one for ordinary negligence, not malpractice." Opp. at 26. ORS 12.110(4) does not apply to "ordinary negligence" claims. *See Hoffman*, 55 Or. App. at 662; *Duncan*, 286 Or. at 729; *Josephs*, 260 Or. at 499.

Despite the attempted sleight-of-hand, it is obvious why Haynes admits he does not have a medical malpractice claim. He does not allege having received <u>any</u> medical treatment from WWE. Conversely, he squarely alleges that he was never treated for concussions or head injuries or advised to seek treatment, and that WWE "employees" discouraged him from seeking outside medical care. *See* Am. Compl. ¶¶ 124–125. If WWE never provided medical treatment to Haynes, then it is factually and legally impossible that WWE could have medical malpractice liability.

## 2. ORS 12.110(4) does not apply to Haynes' Other Counts

ORS 12.110(4) most certainly does not apply to his other claims. None of Haynes' other claims are premised on medical treatment by WWE. *See Doe v. Am. Red Cross*, 128 Or. App. 38, 47, 874 P.2d 828 (1994) ("ORS 12.110(4) is not applicable to these claims, because they do not arise out of medical treatment by defendants.") *aff'd*, 322 Or. 502, 910 P.2d 364 (1996). Every other remaining count is based on the alleged non-disclosure or misrepresentation of concussion-related information. *See* Am. Compl. ¶¶ 143 (fraudulent concealment based on "actively misrepresent[ing], omitt[ing], and conceal[ing] from wrestlers material facts concerning repetitive head impacts"); 152 (negligent misrepresentation of "material facts concerning repetitive head impacts"); 164 (seeking a declaration that WWE "willfully and

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

intentionally concealed material information concerning [concussion] risks"); 167 (negligence based on WWE "ignoring and not properly addressing knowledge that it possessed concerning repetitive head trauma"). Haynes concedes that the only remaining count, "medical monitoring," is not a valid cause of action. Opp. at 27.

Notably, one Oregon court has expressly rejected the notion that ORS 12.110(4) applies to claims that do not arise out of medical treatment, even if, as Haynes contends, those claims relate to a medical malpractice claim. In *Skuffeeda*, a patient sued his hospital and surgeons after a screw was inadvertently left in his body during surgery. 77 Or. App. at 479. He asserted traditional medical malpractice claims, but also fraud claims, alleging that the physicians had discovered the screw but continued to misrepresent the surgery's success. *Id*. If, as Haynes suggests, the applicability of ORS 12.110(4) depends "on the nature of the injury, not the basis for the tort," Opp. at 14, then ORS 12.110(4) would have governed the patient's fraud claims in *Skuffeeda*. But it did not. The court explained that "an action for fraud is not one that arises out of medical treatment and that it falls outside the ambit of ORS 12.110(4)." *Id*. at 484.

Neither of the two cases Haynes cites suggests otherwise. In the first, *Verd v. I-Flow, LLC*, a device manufacturer, as third-party plaintiff, brought a comparative fault claim against a surgeon who implanted the device. No. 3:11-CV-00677-AA, 2013 WL 2178081 (D. Or. May 14, 2013). Haynes claims that "the court ruled the comparative fault claim fell under the statute of repose in § 12.110(4)." Opp. at 14. That is a blatant misstatement. The court expressly declined to decide whether ORS 12.110(4) or the general negligence statute in ORS 12.110(1) applied to the manufacturer's claim. *Id*. at *6 ("Regardless of whether Or.Rev.Stat. § 12.110(1) or Or.Rev.Stat. § 12.110(4) governs, I–Flow's medical negligence and comparative fault claim against Benz is timely."). Moreover, the Court clearly noted that the underlying third-party claim in *Verd* involved a doctor's alleged medical malpractice, unlike Haynes' claims against WWE. *Verd* simply does not stand for the proposition that ORS 12.110(4) applies in the absence of a medical malpractice claim or a doctor-patient relationship. The Court in *Verd* expressly

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

found that the third-party claim was based on the doctor-patient relationship between the plaintiff and a doctor, whose liability extended to anyone injured by the doctor's negligence. The second case, *Sonsteng v. Dominican Sisters of Ontario, Inc.*, was a straightforward medical malpractice action by a patient against her physicians and hospital. No. 06-476-SU, 2007 WL 2984002 (D. Or. Oct. 9, 2007). Nothing in the decision suggests that ORS 12.110(4) covers anything other than medical malpractice claims. To the contrary, the court actually says that ORS 12.110(4) "provides the statute of limitation and the statute of ultimate repose for <u>medical</u> <u>malpractice</u> <u>claims</u>." *Id.* at *5 (emphasis supplied).[4]

> ### 3. Haynes has not alleged any conduct within the five-year repose period of ORS 12.110(4) that could toll his claims

Even if ORS 12.110(4) applied to Haynes' "medical negligence" claim in Count V, which it does not, he has not alleged any facts that would allow tolling in any event.

First, the conduct supporting tolling must be more than the fraud or misrepresentation alleged in support of the substantive claims. *See Duncan*, 286 Or. at 733 (no tolling is available where the allegedly misleading misrepresentations occur contemporaneously with the negligent conduct underlying plaintiff's claims); *Skuffeeda*, 77 Or. App. at 483 ("The misleading representation . . . goes to the gravamen of two of plaintiff's specifications of negligence . . . . Accordingly, it does not toll the five-year period as to these two specifications."); *Coppinger-Martin v. Solis*, 627 F.3d 745, 751 (9th Cir. 2010) ("[T]he plaintiff must point to some . . . active conduct by the defendant above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.") (internal quotation marks omitted). Indeed, in a decision that Haynes cites, but otherwise ignores, *Sonsteng*, the court applied the rule in

---

[4] As an aside, neither of these cases supports Haynes' additional argument that the ten-year ultimate repose period in ORS 12.115 does not operate concurrently with the medical malpractice statute in ORS 12.110(4). *See* Opp. at 15–17. In both cases, the plaintiff brought suit within 10 years after receiving the allegedly negligent medical treatment, so the court had no occasion to consider the interplay between ORS 12.110(4) and 12.115(1). *See Sonsteng*, 2007 WL 2984002, at *6 (filing six years after treatment); *Verd*, 2013 WL 2178081, at *1 (filing a little more than seven years after treatment).

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

*Duncan*, finding that "[t]he alleged misleading representation regarding nondisclosure of the results of the x-ray goes to the gravamen of these specifications of negligence and does not toll the period of ultimate repose as to these allegations, so they must be dismissed as time-barred." 2007 WL 2984002, at *7.

Second, the tolling conduct must occur within the five-year repose period. ORS 12.110(4) provides that "every [] action shall be commenced within five years from the date of treatment, omission or operation upon which the action is based or, if there has been no action commenced within the five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered." Oregon courts have squarely held that "in the absence of fraud, deceit or misleading representation, the five-year period is absolute." *Urbick v. Suburban Med. Clinic, Inc.*, 141 Or. App. 452, 456, 918 P.2d 453 (1996) (emphasis supplied); *see also Gaston v. Parsons*, 318 Or. 247, 261–62, 864 P.2d 1319 (1994) ("[I]n the absence of fraud, deceit, or misleading representation, ORS 12.110(4) provides a statute of repose for medical negligence cases of five years from the date of treatment. Nothing in our holding extends that five-year period."). Haynes cannot extend the five-year repose period based on contrived allegations that occurred long after that period expired.

But that is exactly what Haynes tries to do. Haynes nowhere alleges anything said or done by WWE between 1988, when he last performed, and 1993, when the five-year period lapsed, that could conceivably toll the statute. In fact, Haynes points only to matters not involving him in any way which occurred nearly 20 years after he last performed. *See* Opp. at 11 (citing 2007 congressional testimony, WWE's supposed "cover up" in connection with Chris Benoit's death in 2007, and Dr. Joseph Maroon's alleged attempts to discredit CTE-related research long after Haynes wrestled with WWE).

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

### B. Even If ORS 12.110(4) Did Apply to Haynes' "Medical Negligence" Claim, the Repose Period in ORS 12.115 Operates Concurrently by Providing an Ultimate Ten-Year Cutoff Period

Haynes' desire to shoe-horn his claims within ORS 12.110(4) stems from his need to toll repose periods indefinitely so as to make his stale claims timely. Opp. at 15 ("Because § 12.110(4) applies, Mr. Haynes is shielded by a tolling provision."). But the Oregon Supreme Court has stated on multiple occasions that the tolling permitted under the medical malpractice statute is capped by the ten-year period of ultimate repose in ORS 12.115(1).

Three separate statements by the Oregon Supreme Court explicitly contradict Haynes' argument that ORS 12.115(1) does not operate concurrently with ORS 12.110(4). Opp. at 16 n.10. In *Duncan v. Augter*, the Court, sitting en banc, explained that "[t]he maximum time to commence an action [for medical negligence] is limited by ORS 12.115(1): 'In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of.'" 286 Or. at 727, n.3. The Court reiterated this point fifteen years later in *Gaston v. Parsons*: "In no event may an action for medical negligence be brought more than ten years after the event or occurrence forming the basis for the claim." 318 Or. at 251 n.3 (citing ORS 12.115). And, lest there be any doubt, the Court has squarely provided that ORS 12.115 applies "regardless of *any other statute* or circumstance." *DeLay v. Marathon LeTourneau Sales & Serv. Co.*, 291 Or. 310, 314, 630 P.2d 836 (1981) (emphasis supplied).

Haynes dismisses these statements as dicta, but cites not a single case to support his alternative position. Instead, he retreats to a feeble statutory interpretation argument, suggesting that the two statutes cannot operate concurrently because they conflict. Opp. at 16. This argument does not hold water. As the Oregon Supreme Court in *Duncan* and *Gaston* recognized, the two statutes are easily reconcilable. While ORS 12.110(4) allows for qualified tolling (based on fraud, deceit, or misleading representation) past its five-year repose period, that tolling cannot extend beyond the ten-year ultimate repose period in ORS 12.115(1). There is nothing irreconcilable: Just like the relationship between ORS 12.110(1) and ORS 12.115, ORS

PAGE 10 – WWE'S REPLY IN SUPPORT OF MOTION TO DISMISS

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

12.110(4) permits tolling, and ORS 12.115(1) sets a maximum time period for which that tolling is allowed. *See Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."). Accordingly, regardless of whether ORS 12.110(1) or ORS 12.110(4) governs Haynes' claims, those claims are time-barred by ORS 12.115(1).

### C. Haynes Cannot Avoid the Ten-Year Repose Period By Arguing an Unpled Claim

Recognizing that his claims are time-barred, Haynes improperly tries to "amend" his Amended Complaint to assert a claim based on more recent events. *See* Opp. at 17–18. Haynes newly-minted theory attempts to turn the maxim that no good deed goes unpunished into legal reality. Specifically, he now attempts to assert an unpled claim – what type of claim remains unknown – in connection with the free, voluntary drug and alcohol abuse treatment program WWE created in 2007. Haynes premises this unpled claim upon the fact that he, like all former performers, received a copy of WWE's annual reminder to all former talent that help is available to any former performer who has a drug or alcohol problem. Indeed, he attaches a copy of that letter to his affidavit. *See* Doc. 54, Exh. A. In a truly twisted argument, Haynes now claims that the letter was somehow tortious because it did not tell wrestlers about a purported link between concussions and drug abuse. *Id*. This failure, Haynes says, is a separate act or omission that falls within the ten year repose period under ORS 12.115(1), and allows him to recover for injuries arising from that letter, none of which are or could be pled. *Id*. It does not. This regrettable attempt to end-run the repose period is factually absurd and nowhere alleged in the Amended Complaint.[5]

---

[5]     Needless to say, should any court ever rule that the creation of a voluntary program to help those with drug or alcohol problems, or advising people of it, was somehow tortious, WWE would as a practical matter have to abandon such a program. That predictable consequence clearly would not help any member of the class sought to be represented here by Haynes and his counsel.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

This unpled claim is evidently based on the same improper theory underlying this lawsuit that WWE can be somehow accused of concealing and/or not disclosing *publicly available* scientific opinions published by third parties about concussion risks.  Now, Haynes and his lawyers take that theory a step further, postulating that WWE cannot offer to assist people with drug or alcohol problems unless WWE at the same time gratuitously adopts and publishes the views of class action lawyers regarding the state of the science of head trauma and the symptoms of it.  Such a theory was preposterous before, and even more so in light of the recent opinion of the Honorable Anita Brody, the jurist presiding over the case against the NFL for alleged brain injuries.  Judge Brody just last month repeatedly commented on the state of the science regarding brain injuries and whether particular symptoms could be conclusively linked to brain injury.  *In re Nat. Football League Players' Concussion Injury Litig.*, No. 2:12-MD-02323-AB, – F. Supp. 3d –, 2015 WL 1822254 (E.D. Pa. Apr. 22, 2015).  After reviewing the medical literature, among other findings, Judge Brody concluded:

- "[T]he scientific literature discussing repetitive mild traumatic brain injury is publicly available." *Id.* at *34.

- "[T]he speculation that repeated concussion or subconcussive impacts cause CTE remains unproven." *Id.* at *43 (quotations and citation omitted).

- "[R]esearchers have not determined which symptoms individuals with CTE typically suffer from while they are alive." *Id.* at *43

- "[N]o diagnostic or clinical profile of CTE exists, and the symptoms of the disease, if any, are unknown." *Id.* at *42.

- "The study of CTE is nascent, and the symptoms of the disease, if any, are unknown." *Id.* at *43.

- "Though '[t]here has been widespread media coverage and speculation regarding the late-life or post-retirement risks of cognitive impairment in athletes who engaged in sports involving repetitive head trauma, . . . there has been very little in the way of peer-reviewed scientific literature involving data that suggests any such risk.'" *Id.* at *36 (citation omitted).

- "[T]he rigorous study necessary to understand the symptoms associated with CTE, or its prevalence, have not taken place." *Id.* at n.50.

- "[T]he idea that CTE progresses in defined stages – or even that it is associated with the symptoms listed – has not been sufficiently tested in living subjects." *Id.* at *45.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

- "Beyond identifying the existence of abnormal tau protein in a person's brain, researchers know very little about CTE. They have not reliably determined which events make a person more likely to develop CTE." *Id.* at 43.

- "[I]t is not possible to determine the causality or risk factors [for CTE] with any certainty. As such, the speculation that repeated concussion or subconcussive impacts cause CTE remains unproven." *Id.* (quotations and citation omitted).

- "[A]ny attempt to tie the existence of abnormal tau protein to particular symptoms is suspect." *Id.* at *44.

Haynes' desperate and unpled claim hinges on the notion that it was somehow tortious for WWE not to have told wrestlers about a link between drug abuse and concussions when it offered rehabilitation help even though a distinguished federal judge recently found that attempts to tie particular symptoms to such things are suspect and speculative. The Court cannot, and should not, consider such an implausible and unpled claim.

      **D.**      **The Statute of Repose in ORS 12.115(1) Bars All of Haynes' Claims, and No Tolling Doctrine is Available**

As WWE explained in its opening brief, ORS 12.115(1) bars *all* of Haynes' claims. *See* Mot. to Dismiss at 9–16. Haynes does not dispute that, if the statute applies, it bars <u>all</u> of his claims. He has thus waived any argument to the contrary. *See, e.g.*, *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("[Plaintiff] abandoned her other two claims by not raising them in opposition to the [defendant's] motion for summary judgment."); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (plaintiff waived argument by not asserting it in opposition to defendant's motion to dismiss).

Furthermore, WWE demonstrated that no tolling doctrine can extend the ten-year repose period in ORS 12.115(1), and Haynes did not dispute that point of law either. *See* Mot. to Dismiss at 10–11, 16; *Beals v. Breeden Bros.*, 113 Or. App. 566, 572, 833 P.2d 348 (1992) ("We hold that equitable estoppel is not available to avoid ORS 12.115(1) . . . because to hold otherwise would thwart the legislature's intent to provide an absolute cutoff date for the bringing of such actions."); *Josephs*, 260 Or. at 498 (ORS 12.115(1) was "intended to provide an overall maximum upper limit on the time within which a tort action could be brought, regardless of the

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

date of discovery or of any other circumstances."); *Cereghino v. Boeing Co.*, 826 F. Supp. 1243, 1248 (D. Or. 1993) (rejecting effort to equitably toll the statute of repose).  Thus, if the Court finds that the statute of repose in ORS 12.115(1) governs Haynes' claims, no tolling doctrine can prevent dismissal with prejudice.

## II.     Haynes Has Not Adequately Pled Either of His Two Proffered Tolling Doctrines

WWE has demonstrated that the repose period in ORS 12.115(1) clearly bars each of Haynes' negligence claims in Counts II, IV, and V.  WWE also explained, in its opening brief, why Haynes' fraud claim in Count I, which merely echoes his negligent misrepresentation claim, is also time-barred under ORS 12.115(1).  Mot. to Dismiss at 14–15.  Moreover, Haynes has failed to adequately allege any tolling doctrine that would toll the even shorter statute of limitations for his fraud claim.  First, he relies on the discovery rule, but does not offer a single fact explaining (i) why it took him over two decades after wrestling with WWE to discover his claim; (ii) the circumstances by which he discovered an alleged decades-old fraud; or (iii) any diligence on his part.  Second, he asserts that WWE fraudulently concealed information from him, but fails to allege any facts with particularity or any concealment that occurred within the limitations period, and incorrectly argues that he does not have to do so.  *See* Opp. at 25, n.13.  In sum, Haynes fraud claim is time-barred.

### A.      Haynes Does Not Allege a Single Fact Specific to Him Showing Why He Failed to Discover His Decades-Old Injury Earlier

Haynes brazenly contends that he has no obligation whatsoever to allege why it took him nearly 30 years to file this lawsuit.  Opp. at 4.  Thus, he provides not one fact explaining his delay.  Instead, he bobs and weaves behind generalized allegations that have nothing to do with him specifically, and asks the Court to infer from those allegations that his delayed filing is justified.  This Court requires more from a plaintiff making fraud charges based on events that allegedly occurred decades in the past, and Haynes simply ignores the authority cited by WWE requiring him to do so.  In *TRM Corp. v. Paulsell*, No. CV-02-215-ST, 2002 WL 31549112 (D. Or. June 4, 2002), a plaintiff brought claims two years after the statute of limitations had expired

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

but failed to explain the delay.  This Court dismissed the late claims because "[t]he face of the Complaint d[id] not reveal why [plaintiff] delayed filing its claims beyond the two year statute of limitations."  *Id*.  In explaining that a plaintiff "must allege facts justifying that delay," the Court relied on *Mitchell v. Greenough*, 100 F.2d 184, 186 (9th Cir. 1938):

> It is a familiar rule of pleading in cases involving delay in the beginning of actions, where it is sought to delay beyond the statutory period by an allegation that the plaintiff did not know or discover the facts upon which he bases his action until a certain date, that such allegation must be fortified by a statement of facts which justifies the claim of ignorance, and this requires a statement of the circumstances under which the discovery was made as well as the reasons for prior ignorance.

Tellingly, Haynes does not comment on this Court's decision in *Paulsell* nor attempt to show compliance with it.[6]  The plaintiff in *Paulsell* failed to explain a mere two-year delay in filing suit.  Here, Haynes filed these claims <u>26 years</u> after wrestling with WWE, yet offers no facts justifying his delay or explaining "the circumstances under which the discovery was made as well as the reasons for prior ignorance."  *Mitchell*, 100 F.2d at 186.

    Instead, Haynes' repeatedly manipulates general allegations in his Amended Complaint to make it appear that those allegations are specific to him.  ***First***, Haynes argues that his "symptoms arose long after the trauma," citing misleadingly to paragraphs 27, 34 to 37, and 131 of the Amended Complaint.  Opp. at 7.  Paragraphs 27 and 34 to 37 discuss concussions in general, not Haynes specifically.  Paragraph 131 merely says that, "As a result of the head trauma he sustained while wrestling in WWE, Haynes suffers from depression, exhibits symptoms of dementia, and believes he has long term brain damage."  Those allegations do not say when Haynes' symptoms arose over the past 26 years, let alone when or how he determined those alleged injuries were uniquely caused by head injuries sustained performing for WWE.[7]

---

[6]    WWE cited to *Paulsell* in two different places in its opening brief.  Mot. to Dismiss at 5, 18.

[7]    In this regard, it is worth noting that Haynes spent most of his wrestling career performing with entities other than WWE, including his own promotion in Oregon.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

**Second**, Haynes suggests he "had reason to attribute his concussion symptoms to other possible causes, including drug use and mental illness." Opp. at 8–9. He directs the Court to paragraphs 27, 128, and 129 of his Amended Complaint. His citations are again dishonest. Paragraph 27 alleges generally that "many concussions go undiagnosed" and that "the majority of concussions are not so obviously recognized." Paragraphs 128 and 129 do not allege any drug use by Haynes since departing WWE. Instead, Haynes asserts in those paragraphs that he took drugs while wrestling for WWE. Nowhere does Haynes contend that <u>he in fact</u> attributed his alleged medical issues to other causes, or when or how he learned otherwise.

**Finally**, Haynes attempts to excuse his delay by alleging that WWE "consistently downplayed or denied the risk of concussion injuries," thus supposedly concealing its role in Haynes' alleged injury. Opp. at 9–10. Haynes does <u>not</u> allege that WWE ever downplayed or denied the risk of concussions <u>to him</u> after 1988, nor can he conjure up anything WWE did prior to 2007. Even then, he tortures and misrepresents events that happened in 2007 which have precisely nothing to do with him, and which cannot explain his inaction for 20 years prior to 2007. Ironically, he insists elsewhere in his brief that the Court should <u>not</u> attribute knowledge of these public statements to him. Opp. at 12. In any event, Haynes stops well short of alleging or explaining when he supposedly discovered a substantial possibility that WWE violated his interests, or what he did to discover his claims within the past 20 years.[8]

Haynes has conspicuously avoided pleading <u>any</u> facts specific to him "justifying [his] delay." *Paulsell*, 2002 WL 31549112, at *2.[9] And for good reason: his own Amended

---

[8]    Haynes also suggests in his Opposition that he might have failed to timely discover his claim because his alleged concussions impaired his faculties. Opp. at 8. Of course, he never actually <u>alleges</u> that as a basis for his delay. If concussions impaired his faculties for over two decades, the only way they would not still impair his faculties is if he healed from them, the exact opposite of what he otherwise alleges, which is that his symptoms were long in developing. Either way, he has not alleged facts showing what is required under *Paulsell* and *Mitchell*.

[9]    On pages 5 and 6 of his Opposition, Haynes appears to argue state tolling doctrines and state cases establishing tolling requirements do not apply. He is wrong. *See Bancorp Leasing &*

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

Complaint is littered with publicly available medical studies and media reports that, if his allegations are believed, would have provided notice of his claims long before October 23, 2012, which is two years prior to this lawsuit.[10]  Mot. to Dismiss at 8–9.  In light of the obvious limitations issues on the face of Haynes' Complaint, he had an obligation to come forward with specific facts explaining his delay.  Absent such facts, he cannot rely on the discovery rule to toll his stale fraud claim.  *See Mitchell*, 100 F.2d at 186; *Paulsell*, 2002 WL 31549112, at *2.

### B.  Haynes Has Failed To Plead Fraudulent Concealment with Particularity

In yet another demonstration that Haynes' lawsuit ignores controlling legal principles, Haynes admits that his fraud and misrepresentation claims must be pled with particularity (which he did not do), but "strongly disagrees" that he has to plead fraudulent concealment as a tolling mechanism with particularity.  Opp. at 4, 25 n.15.  He reaches this conclusion by failing to acknowledge the distinction between (i) pleading facts showing that he filed within the limitations period and (ii) pleading a tolling doctrine when it is clear from the face of the Complaint, as it is here, that he has <u>not</u> filed within the limitations period.  Here, there is no

---

*Fin. Corp. v. Agusta Aviation Corp.*, 813 F.2d 272, 274 (9th Cir. 1987); *see also Sonsteng*, 2007 WL 2984002, at *4 ("[T]his court resolves tolling issues as though it were an Oregon Court").

[10]     Haynes contends that the Court cannot assume he was aware of these studies and media reports.  The only case he cites for this proposition expressly declined to hold that knowledge of media reports can never be attributed to a plaintiff.  *Johnson v. Multnomah Cnty. Dep't of Cmty. Justice*, 344 Or. 111, 113, 178 P.3d 210 (2008) ("We do not reject the possibility that, in some circumstances, information appearing in such media reports may be imputed to a plaintiff as a matter of law.").  That decision involved a plaintiff who had been raped by an unknown assailant when she was 14 years old.  The defendant, who had been supervising the assailant, argued that a reasonable person in the victim's shoes would have learned about the defendant's allegedly inadequate supervision based on newspaper articles describing the assailant and his crimes.  The court held that "[t]he victim of an intentional crime perpetrated by an unknown assailant would have no reason even to speculate that his or her injury might have been caused in part by the tortious conduct of a parole agency or any other third party."  *Id.*  Here, by contrast, there is no third party involved.  Haynes knew better than anyone each of the blows he took to the head, and cites multiple media reports claiming a link between WWE to other concussion injuries.  He cannot plausibly disclaim knowledge of these widespread reports, and did not even attempt to do so in the Amended Complaint.  *See* Mot. to Dismiss at 7–8.

PAGE 17 – WWE'S REPLY IN SUPPORT OF MOTION TO DISMISS

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

question that Haynes has filed outside of the two-year statute of limitations under either ORS 12.110(1) or ORS 12.110(4).[11] Haynes knew his claims were time-barred, which is exactly why he attempted to plead, albeit insufficiently, tolling doctrines. *See* Am. Compl. ¶¶ 39-41.

The cases Haynes cites do not address the requirements for pleading a <u>tolling</u> doctrine. *See* Opp. at 5, n.2. Yet he suggests that the "more recent" cases cited in that footnote, including trial court decisions, somehow declined to follow Ninth Circuit law directly on point cited by WWE. *Id*. (suggesting that *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406 (9th Cir. 1987) "runs against the weight of more recent Ninth Circuit case law."). He is wrong. Trial judges are not free to disregard controlling Ninth Circuit decisions, and did not do so in the cases cited by Haynes. In fact, a continuum of numerous Ninth Circuit decisions make clear that fraudulent concealment as a tolling doctrine, must be pled with particularity. *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978) ("To carry that burden, he had to plead facts showing that [defendant] actively misled him, that he had neither actual nor constructive knowledge of the facts constituting his claim for relief despite his diligence in trying to discover the pertinent facts . . . . [Plaintiff] cannot rely upon conclusory statements to avoid the bar of limitations. He must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts."); *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980) ("[T]he plaintiff must plead with particularity the facts which give rise to the claim of fraudulent concealment."); *Volk*, 816 F.2d at 1415–16 ("To invoke the doctrine in the complaint, appellants must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts."); *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499,

---

[11]     The cases Haynes cite actually reiterate that a court can and should dismiss stale claims on a Rule 12(b)(6) motion. *E.g.*, *Pesnell v. Arsenault*, 543 F.3d 1042 (9th Cir. 2008) (affirming authority of District Court to consider limitations arguments on 12(b)(6) motion when defense appears on the face of the complaint); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (dismissal is appropriate "when the running of the statute is apparent on the face of the complaint") (internal quotations omitted); *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (same).

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

502 (9th Cir. 1988) ("To toll the statute of limitations under this theory, [plaintiff] must do more than show that it was ignorant of its cause of action . . . . [plaintiff] must plead with particularity the circumstances of the concealment and the facts supporting its due diligence."); *Guerrero v. Gates*, 442 F.3d 697, 706—07 (9th Cir. 2006) ("The plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner and must plead with particularity the facts which give rise to the claim of fraudulent concealment.") (internal quotations omitted). None of the cases Haynes cites to in his effort to avoid pleading fraudulent concealment with particularity mentions even one of the five Ninth Circuit decisions above – let alone purports to overrule them. Indeed, the single Ninth Circuit decision cited by Haynes, *Rivera v. Perit Sons Farms, Inc.*, actually affirms that it is proper to rule on limitations issues when the defense is obvious on the face of the Complaint, as it is here. 735 F.3d 892, 902 (9th Cir. 2013) (where "the statute of limitations issues are apparent on the face of the complaint" the trial court "was correct to address them").

Under the <u>correct</u> case law, which Haynes simply ignores, Haynes must allege facts <u>with particularity</u> "showing affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Rutledge*, 576 F.2d at 250. Haynes does not contend that he has pled fraudulent concealment with this particularity, nor could he. As WWE pointed out in its opening brief, Haynes' only effort to plead concealment as a tolling mechanism comes in a single conclusory allegation: "Defendant knew that the Plaintiff and Class were suffering concussions during and prior to their careers and concealed that materials [sic] information from Plaintiff and all WWE wrestlers." Mot. to Dismiss at 16; Am. Compl. ¶ 140. That is not a particularized allegation, nor affirmative conduct by WWE which actively misled him. Additionally, Haynes does not even attempt to plead due diligence in uncovering the facts supporting his claim, which is an entirely separate requirement for pleading fraudulent-concealment tolling. *See, e.g.*, *Rutledge*, 576 F.2d at 249–50.

**K&L GATES LLP**
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

Haynes' concealment tolling allegations fail for two additional reasons: he does not allege conduct by WWE "above and beyond the wrongdoing upon which [his fraud] claim is filed," *Coppinger-Martin v. Solis*, 627 F.3d 745, 751 (9th Cir. 2010) (internal quotations omitted), or "affirmative inducement" as opposed to silence or passive conduct, *Philpott v. A.H. Robins Co.*, 710 F.2d 1422, 1425 (9th Cir. 1983). His lone allegation rehashes the same alleged omission underlying his substantive counts, and is based solely on concealment, not affirmative inducement. Am. Compl. ¶ 140. WWE explained these deficiencies in its opening brief. Mot. to Dismiss at 17. Haynes does not dispute them in his Opposition.

Finally, Haynes attempts to salvage his tolling argument by pointing to alleged concealment not even directed at him that occurred long after the limitations period expired. This too is baseless. The only concealment allegations Haynes makes relate to conduct that occurred nearly two decades after he left WWE.[12] In its opening brief, WWE cited six cases for the commonsense proposition that fraudulent concealment must occur *within* the limitations period to extend the limitations period. Mot. to Dismiss at 17–18. Again, those cases included a Ninth Circuit decision, *Estate of Amarov v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011), which explained that the focus is whether fraudulent concealment dissuaded the plaintiff from filing the claim within the limitations period. The law is that fraudulent concealment allegations can extend a limitations period if the affirmative conduct occurred within the limitations period; cannot resurrect an expired limitations period based on allegations outside the limitations period; and can never alter the repose statute. Tellingly, Haynes fails to address any of the cases so stating, and has waived any argument to the contrary.

---

[12]  For example, Haynes relies on a mischaracterization of 2007 testimony before a congressional committee and the WWE's creation of a drug treatment program in 2007 to revive claims that expired no later than 1990, two years after he stopped wrestling with WWE. Opp. at 11.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

**III.    Haynes' Substantive Counts Independently Fail to State a Claim**

Not only are Haynes' claims time-barred, but not a single count states a claim for relief. Haynes concedes that Count VI for "medical monitoring" is not a recognized cause of action in Oregon. He effectively abandons his claims in Counts III and VII for "declaratory and injunctive relief" and "strict liability for abnormally dangerous activities." Haynes does not allege a physician-patient relationship with WWE – an entertainment company, not a medical provider – to support his "medical negligence" claim in Count V. And the remaining counts, based on fraud and misrepresentations, are not pled with particularity and do not allege the requisite special relationship.

> **A.    Medical Monitoring Is Not a Recognized Cause of Action or an Appropriate Remedy**

In its opening brief, WWE demonstrated that medical monitoring is not an independent cause of action in Oregon. Mot. to Dismiss at 24–25. Haynes does not dispute that assertion in his Opposition. *See* Opp. at 27. His medical monitoring claim should, therefore, be dismissed with prejudice. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

Haynes insists, however, that he should be able to pursue medical monitoring as a remedy, presumably on his time-barred negligence claims. The Oregon Supreme Court has squarely rejected medical monitoring based on "negligent conduct that results only in a significantly increased risk of future injury." *Lowe v. Philip Morris USA, Inc.*, 344 Or. 403, 415, 183 P.3d 181 (2008). The mere increased risk of future injury is precisely why Haynes seeks medical monitoring. Am. Compl. ¶¶ 178 (WWE's alleged conduct "*may* lead to latent physical changes which ultimately cause significant neurological impairment"); 183 (medical monitoring is necessary to "*determine*[] whether they have suffered the injuries alleged herein"); 184–185 (medical monitoring will reduce "*the risk* that Plaintiff and the members of the Class will suffer long term injuries") (emphasis added). Haynes has not alleged "that any future physical harm to

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

[him or the putative class] is certain to follow as a result" of WWE's alleged conduct.  *Lowe*, 344 Or. at 411.  Even if it was not a time-barred negligence-based claim, which it is, medical monitoring would not be an appropriate remedy, and should be dismissed for that additional reason.

**B.      Haynes Cannot Avoid Dismissal with Prejudice by Voluntarily Abandoning His Claims for Strict Liability and Declaratory/Injunctive Relief**

Haynes offers no justification for his claims for strict liability and declaratory and injunctive relief.  He asks, however, that the claims be dismissed without prejudice, ignoring completely WWE's several arguments why dismissal <u>with</u> prejudice is required.  Opp. at 33 n.19.  As a result, he has waived any challenge to dismissal with prejudice.  *See, e.g.*, *Jenkins*, 398 F.3d at 1095 n.4; *Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132.

**C.      Haynes Has Not and Cannot Allege a Physician-Patient Relationship to Sustain His Medical Negligence Claim**

Haynes insists that he does not have to allege a physician-patient relationship with WWE to state a "medical negligence" claim.  Haynes is wrong.  He does not even attempt to distinguish the decisions cited by WWE that hold that such a relationship is necessary to plead this kind of claim.  *See, e.g.*, *Mead v. Legacy Health Sys.*, 352 Or. 267, 276, 283 P.3d 904 (2012) ("[A] physician-patient relationship is a necessary predicate to stating a medical malpractice claim.").

Furthermore, even the cases Haynes cites illustrate why this claim must be dismissed.  Opp. at 26.  Both cases involved *medical providers* being sued for medical malpractice.  Both involved a *medical relationship* between the patient and the medical providers.  And both involved *actual treatment* by the medical provider to the plaintiff.[13]  Here, on the other hand, WWE is not a medical provider, Haynes does not allege a medical relationship with WWE,

---

[13]      In *Curtis v. MRI Imaging Servs. II*, the defendants, medical providers, "performed a medical procedure" on plaintiff, thus, "giv[ing] rise to a duty running to plaintiff to exercise that degree of care, knowledge and skill ordinarily possessed and exercised by the average provider of that type of medical service."  327 Or. 9, 14, 956 P.2d 962 (1998).  In *Piehl v. Dallas Gen. Hosp.*, the defendants, also medical providers, operated on plaintiff for stomach ulcers.  280 Or. 613, 615, 571 P.2d 149 (1977).

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

insists that he was *never treated* by WWE, and disavows any medical malpractice claims.  Am. Compl. ¶¶ 125–26; Opp. at 26.  There is simply no basis, in fact or law, to sustain a medical negligence claim against WWE, an entertainment company, where no medical relationship has been or could be alleged.  *See Sullenger for Sullenger v. Setco Nw., Inc.*, 74 Or. App. 345, 348, 702 P.2d 1139 (1985) (when defendant physician declined to manage case of spinal meningitis, "evidence did not show the existence of a doctor-patient relationship").

> **D.      Haynes Has Not Pled His Fraud and Misrepresentation Claims with Particularity**

Haynes does not dispute that he must plead his fraud and misrepresentation claims with Rule 9(b) particularity, Opp. at 25, but then redefines his claims to avoid doing so.  Although his fraud and negligent misrepresentation counts both claim WWE "actively misrepresented, omitted and concealed" otherwise unidentified facts about head injuries, Haynes now argues those claims are "chiefly founded on concealment" and therefore the particularity standard is "relaxed."  *Id.*  So relaxed that Haynes, even now, never identifies exactly what it was that was known to WWE in 1986-1988 that it fraudulently concealed from him or omitted telling him.

As an initial matter, to the extent a relaxed standard has been applied at all, it applies only when the defendant is in exclusive possession of the material facts it allegedly omitted.  Haynes has not pled a single material fact regarding concussions known exclusively to WWE in 1986 to 1988, or at any time.  Indeed, the majority of the publicly available scientific articles cited by Haynes throughout his meandering Amended Complaint that WWE is accused of fraudulently omitting to tell him about did not even exist in 1986 to 1988.  Footnotes 3 through 10 in the Amended Complaint cite scientific opinions published from 2003 to 2014, a different century than when Haynes performed.  Footnote 23 cites a 2010 article.  Paragraph 104 cites other studies published in this century, well after Haynes last performed, and exactly two specific articles that would have been in existence in 1986 to 1988.  One was a 1973 report regarding boxing, and the other was a 1986 Concussion Grading Guideline.  Am. Compl. ¶104.  Nowhere does Haynes plead that WWE knew of either of these two publications, allege any factual basis

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

to assert WWE concealed either study from him, or explain how not disclosing either of those two scientific papers harmed him. Haynes has simply failed to plead his claims even under the so-called relaxed particularity standard.

1. **There is no reason why the relaxed particularity pleading standard should apply to Haynes' claims**

Haynes concedes that if a relaxed pleading standard applies when alleging fraud by omission, it does so "when the defendant has specific knowledge the plaintiff cannot access." Opp. at 25; *accord Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) ("[W]e have occasionally relaxed the particularity requirement where 'plaintiffs cannot be expected to have personal knowledge of the relevant facts.'") (citation omitted); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("[T]he rule may be relaxed as to matters within the opposing party's knowledge."); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007) (finding pleadings adequate where plaintiff alleged, among other things, that defendant "failed to disclose a material fact within its exclusive control").

Here, Haynes does not allege a single withheld fact – let alone a material fact – that was exclusively within WWE's possession or control between 1986 and 1988, or that Haynes could not access himself. Read liberally, the Amended Complaint seems to allege that WWE withheld knowledge it gleaned about concussion risks from publicly available scientific studies, most of which did not even exist between 1986 to 1988. Am. Compl. ¶¶ 103–106; Opp. at 26 (charging WWE with "concealment of known health risks"). Information that was not even in existence cannot be alleged to have been exclusively within WWE's possession. Haynes' argument guts Rule 9(b) and essentially admits that he has no basis to allege that WWE omitted to tell him anything between 1986 and 1988 yet he charged WWE with fraud. That is not relaxed pleading. It not only fails to satisfy Rule 9(b); it violates Rule 11.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

## 2. The Amended Complaint falls well short of complying with Rule 9(b)

The Ninth Circuit has reiterated that a nondisclosure claim still "must be pleaded with particularity under Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (dismissing plaintiffs' nondisclosure claims that "were couched in general pleadings" because "[s]uch general pleadings do not satisfy the heightened pleading requirements of Rule 9(b)"); *see also Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (explaining that "[w]hen a claim rests on allegations of fraudulent omission . . . the Rule 9(b) standard is somewhat relaxed" but that, "[n]onetheless, a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity").

Haynes suggests that, even though he has not alleged the who, what, when, why, or where of his claims, he has provided "more than enough information to fairly prepare an informed defense." Opp. at 26 n. 16.[14] He has not. Keeping in mind that Haynes' allegations are three decades old, here are but a few reasons illustrating why:

- The Amended Complaint does not allege any specific information known in 1986 to 1988 to WWE regarding concussions, let alone who knew the information, when they knew it, how they knew it, or how they prevented Haynes from acquiring the information. *See* Mot. to Dismiss at 21.

- The Amended Complaint alleges that WWE provided inadequate medical care, but does not allege the name of a single physician or medical provider; the date or nature of any treatment <u>Haynes received</u> (in fact, he alleges that WWE did *not* treat him); or what treatment he should have been given that he was not.

- Haynes claims that WWE "actively misrepresented" information to him, Am. Compl. ¶ 143, but does not allege a single affirmative misrepresentation, let alone who made the misrepresentation, when it was made, or how it was misleading.

---

[14] Notably, Haynes only makes this statement after inappropriately trying to supplement the record in his Opposition. *See* Declaration of William Haynes, Exhibit A [ECF No. 54] (attaching a form letter that he received 26 years after wrestling with WWE). As explained earlier, new evidence raised in an opposition brief cannot be considered. *Schneider*, 151 F.3d at 1197 ("The 'new' allegations contained in the [plaintiffs'] opposition motion, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Bojorquez*, 2013 WL 6055258, at *4 ("Thus, in evaluating defendants' motions, this Court disregards the allegations first articulated in plaintiffs' response.").

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

Rule 9(b)'s particularity requirement is meant to, among other things, "deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs," and "to protect those whose reputation would be harmed as a result of being subject to fraud charges." *Kearns*, 567 F.3d at 1125 (internal quotations omitted). Here, Haynes began this lawsuit alleging both affirmative fraud and fraud by omission, but has since conveniently abandoned the former, which would have required him to come forward with an actual misrepresentation. Having no actual misrepresentations, Haynes now pursues only fraud by omission, hoping that he can hide behind a "relaxed" pleading standard. He does not allege with <u>any</u> specificity what WWE omitted, who omitted it, or why the omission was material. Rather, it is clear that Haynes' only goal is to get past dismissal practice in order to burden WWE with asymmetrical discovery demands. Rule 9(b) requires more of Haynes, particularly where his fraud charges stem from events nearly 30 years ago.

### 3. Haynes has not alleged a special relationship creating a duty to speak

Setting aside Haynes' vague allegations, he has not and cannot allege a special relationship to support his fraud and misrepresentation claims. As WWE pointed out in its opening brief, there is no duty to speak in the absence of a special relationship. Mot. to Dismiss at 20. In response, Haynes argues that WWE had a duty to speak for two reasons: (i) WWE "voluntarily assumed the duty of assessing and treating Mr. Haynes for concussions" by "gratuitously offer[ing] medical care to Mr. Haynes and other wrestlers during performances" and (ii) WWE made "partial representations" thereby requiring disclosure of "the whole truth." Opp. at 21–23. Neither argument survives even a brief review of the Amended Complaint.

As to the first argument, Haynes never actually alleges that WWE gratuitously offered <u>him</u> medical care. Instead, as he does repeatedly throughout the Opposition, Haynes misleadingly cites generalized paragraphs in the Amended Complaint that he never actually alleges apply to him, and which he knows do not apply to him. Here, Haynes cites paragraphs 108 and 109 for the statement that "WWE gratuitously offered medical care to Mr. Haynes and

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

other wrestlers during performances." Opp. at 20. That is not what paragraphs 108 and 109 say. Rather, those paragraphs contain only general allegations that do not allege that WWE ever offered Haynes any medical treatment.[15]

By contrast, in the section of the Amended Complaint containing facts specific to Haynes, he cites to only one particular wrestling event, but never alleges that there was medical staff on site. Am. Compl. ¶ 126.[16] In fact, he alleges that his fellow wrestlers – not WWE medical staff – treated his lacerations from that event. *Id.* Looking at the Amended Complaint rather than his misleading argument, it is clear that Haynes has alleged nothing more than "an 'arm's-length' commercial or business relationship where [both parties] were acting in their own economic interest." *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 22 F. Supp. 3d 1126, 1135 n.1 (D. Or. 2014). That is not a special relationship triggering a duty to disclose. *Id.*

Haynes' second argument, based on partial representations, fares no better. He alleges three such representations: (i) WWE downplayed the risk of concussions in media reports and congressional testimony, (ii) WWE engaged in a campaign to discredit scientific studies on the issue; and (iii) WWE encouraged him and others to wrestle through injuries.[17]

Haynes does not allege that either of the first two alleged half-truths were made to or heard by him; that any of these alleged half-truths were spoken during his relationship with WWE from 1986 to 1988, or that he would have acted differently had the omitted information –

---

[15]     Haynes knows full well that WWE added medical staff on-site at matches long after Haynes last performed. The citation to those paragraphs is a deliberate attempt to mislead the Court.

[16]     In the introduction to his Opposition, Haynes also asserts that he suffered a concussion at Wrestlemania III but WWE "encouraged Mr. Haynes to keep wrestling." Opp. at 1. Not only does Haynes fail to cite an allegation for this statement, but the only allegations concerning Wrestlemania III make no mention at all of him interacting with any alleged medical staff. *See* Compl. ¶ 126.

[17]     Haynes also suggests that, by offering free drug treatment to its wrestlers, WWE undertook a duty to discuss concussion risks. Opp. at 22. As WWE explained earlier, this newly minted, unpled claim is both legally baseless and inadequately alleged. *See supra* Section I.C.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

whatever it is – been disclosed with these so-called half-truths. *See Benson Tower*, 22 F. Supp. 3d at 1133 ("[I]n order adequately to plead fraud based on a half-truth made by [defendant], the [p]laintiff must plead that a relevant person: (1) heard the half-truth; and (2) would have behaved differently had the omitted information been disclosed."). Having not been directed to, or even allegedly heard by, Haynes, these public statements cannot trigger a further duty to speak to Haynes. Nor can Haynes plausibly allege reasonable reliance if he never heard these statements between 1986 and 1988, which he obviously could not have since they were not uttered until decades later. *See id* at 1134 (dismissing fraud claim based on half-truths where plaintiff failed to plead reasonable reliance).

The third alleged half-truth runs into multiple problems. First, it is not clear how providing encouragement can be considered a statement at all. Second, Haynes, of course, does not plead the alleged encouragement with particularity, *e.g.*, who said it, what they said, or when they said it, or even that the injury he was urged to wrestle through was a head injury. Am. Compl. ¶ 124 (alleging only that WWE "induced him to continue wrestling even when obviously injured"). Third, if Haynes was "obviously injured," he cannot plausibly allege justifiable reliance to support a fraud claim. *See Benson Tower*, 22 F. Supp. 3d at 1134.

In sum, even if Haynes' fraud claim survives the ten-year repose period, which it does not, and even if he adequately alleged a tolling doctrine to avoid the shorter limitations period, which he did not, the fraud claim does not state a claim for relief. The Amended Complaint should be dismissed with prejudice in its entirety.

## IV. This Court Lacks Personal Jurisdiction Over WWE

Plaintiff admits he bears the burden of demonstrating that the Court can exercise personal jurisdiction over WWE. *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 850 (9th Cir. 1993); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 455 (9th Cir. 2007). In doing so, plaintiff "cannot simply rest on the bare allegations of [his] complaint," but rather must

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

come forward with competent evidence, by affidavit or otherwise, supporting personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).[18]

### A.    Plaintiff Has Failed To Establish General Jurisdiction

To establish general jurisdiction, Plaintiff must prove that WWE carries on "substantial" or "continuous and systematic" business activities within Oregon. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124, 1125 (9th Cir. 2002). This high standard cannot be met based on the random and attenuated contacts raised by Plaintiff. *Schwarzenegger*, 374 F.3d at 801 (plaintiff asserting general jurisdiction must meet an "exacting standard"); *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1333 (D. Or. 2014) (no general jurisdiction over company that is neither headquartered nor incorporated in Oregon, and that does not have extensive contacts "as to render it essentially at home"). The Ninth Circuit "regularly…decline[s] to find general jurisdiction even where the contacts [with the purported forum] were quite extensive." *Amoco Egypt Oil Co.*, 1 F.3d at 851 n.3 (emphasis supplied).

Here, plaintiff presents no proof of "substantial" or "continuous and systematic" business activities by WWE in Oregon. It is uncontroverted that WWE: (1) is neither headquartered nor incorporated in Oregon; (2) does not have an office or a telephone listing in Oregon; (3) does not own or lease real property in Oregon; (4) has not borrowed money or maintained bank accounts in Oregon; and (5) has never sued or been sued in Oregon prior to this case. Langham Aff. ¶ 4, 7-11.[19] Plaintiff's attempt to escape these facts is unsuccessful.

---

[18]    Plaintiff is wrong when he contends that on a motion to dismiss for lack of personal jurisdiction, that factual disputes "must be resolved in the plaintiff's favor." Opp. at 28. To the contrary, plaintiff's conclusory assertions are not entitled to any consideration. *See Holland Am. Line Inc.*, 485 F.3d at 455 (court must reject plaintiff's conclusory allegations that are contradicted by defendant's well-supported statements); *Curran v. Jerome Hotel*, 1994 WL 250007, at *1 (9th Cir. Jun. 9, 1994) (court "may not assume the truth of allegations in a pleading which are contradicted by affidavit") (internal quotations omitted).

[19]    *See, e.g.*, *Emery v. BioPort Corp.*, 273 F. App'x 694, 695 (9th Cir. 2008) (no jurisdiction where defendant did not maintain office, listing and did not own or lease property in forum state); *Traeger Pellet Grills, LLC v. Deadwood Biofuels, LLC*, No. 3:11-cv-01221-JE, 2012 WL 4040211, at *3 (D. Or. June 21, 2012) ("Defendant . . . does not rent or own real property in

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

Contrary to Plaintiff's suggestion, having a registered agent and a single employee in Oregon does not confer general jurisdiction over WWE. *See Dynamic Software Servs. v. Cyberbest Tech., Inc*, No. C-13-04217 DMR, 2014 WL 3373924, at *5 (N.D. Cal. July 9, 2014); *King v. American Family Mut. Ins. Co.*, 632 F.3d 570, 580 (9th Cir. 2011) ("continuous corporate operations" required for general jurisdiction) (internal quotations omitted). Likewise, WWE's hosting of 13 shows in Oregon in the past 10 years does not establish general jurisdiction. These nominal contacts are insufficient; they are not "continuous and systematic;" and, in any event, the shows were performed by a separate corporation. *See* Langham Aff. ¶ 13; *see also SD Holdings, LLC v. Aircraft Owners & Pilots Ass'n, Inc.*, No. 3:13-cv-01296-AC, 2014 WL 3667881, at *5 (D. Or. July 22, 2014) (noting another entity conducted activities in forum state); *Bates,* 993 F. Supp. 2d at 1333; *Traeger Pellet Grills, LLC*, 2012 WL 4040211, at *3 (occasional trips to Oregon are insufficient to confer general jurisdiction); *Silicon Economics, Inc. v. Financial Accounting Found.*, No. 10-cv-01939-LHK, 2010 WL 4942468, at *3 (N.D. Cal. Nov. 24, 2010) (infrequent meetings and presentations are insufficient to confer general jurisdiction).

Nor can Plaintiff "meet the high standard of general jurisdiction" by citing two random WWE advertisements that appeared on WWE's website. *See Advice Co. v. Novak*, No. C-08-1951 JCS, 2009 WL 210503, at *8 (N.D. Cal. Jan. 23, 2009) (intermittent advertisements and solicitations insufficient to confer general jurisdiction).[20] To the extent Plaintiff claims jurisdiction based on WWE's sale of merchandise and event tickets in Oregon and alleged revenues generated from pay-per-view and other telecasts, those bald claims are not enough because Plaintiff presented "no facts [] that address [WWE's] business volume or economic

---

Oregon; has no offices, . . . telephone listings, mailing addresses, bank accounts, licenses or other operations in Oregon; . . . and has not brought any lawsuits in the State of Oregon.").

[20] Under Plaintiff's theory, any company with a website would be subject to jurisdiction anywhere in the country, but this is not the law. *Holland Am. Line*, 2005 WL 1172429, at *6; *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (mere existence of a website to advertise or solicit customers is insufficient to find jurisdiction).

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

impact in [Oregon]." *Ocean SW, Inc. v. Canam Pet Treats, Inc.*, No. 14-cv-2059-BAS, 2015 WL 2180492, at *5 (S.D. Cal. May 7, 2015); *see Silicon Economics, Inc.*, 2010 WL 4942468, at *4. Accordingly, general jurisdiction does not exist.

### B.      Plaintiff Has Failed To Establish Specific Jurisdiction

To establish specific personal jurisdiction, Plaintiff would have to introduce competent evidence that: (1) WWE purposefully availed itself of the privilege of conducting activities in Oregon; (2) Plaintiff's causes of action arise from, or are connected with, that purported availment; and (3) the exercise of jurisdiction would be reasonable in that it would not offend traditional notions of fair play and substantial justice. *Bates*, 993 F. Supp. 2d at 1333.  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State," *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (internal quotations and citation omitted), and that the act causes plaintiff harm, *Glencore Grain*, 284 F.3d at 1123.

Plaintiff has not met that burden.  Plaintiff's Amended Complaint is completely silent as to how and when WWE harmed Plaintiff in Oregon.  Although Plaintiff submitted an affidavit in which he claims for the first time that he "participated in 4 matches in Oregon" and suffered "blows to the head" "[d]uring these events," these self-serving and vague statements do not carry the day.  *See Farmer Boys' Catfish Kitchens Int'l, Inc. v. Golden West Wholesale Meats, Inc.*, 18 F. Supp. 2d 656, 661-62 (E.D. Tex. 1998) (self-serving and uncorroborated affidavit is insufficient).  Even if Plaintiff's uncorroborated statements were accepted as true, they still fail to prove that WWE intentionally harmed Plaintiff in Oregon, or that WWE performed any intentional acts which it knew would cause harm to Plaintiff in Oregon.  *Oil Pad Solutions, LLC v. Parsons*, No. 3:12-cv-01917, 2013 WL 1946743, at *3 (D. Or. May 8, 2013).

Nor is a "single contact" by itself enough to establish jurisdiction as Plaintiff would suggest.  *See* Opposition at 30.  Plaintiff is mistaken when contending that the purposeful availment prong is satisfied because WWE knew that, as an Oregon resident, Plaintiff would

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

experience the effects of WWE's conduct in Oregon. "[M]ere knowledge that the plaintiff is based in the forum state is insufficient to establish purposeful availment." *Dynamic Software Servs.*, 2014 WL 3373924, at *9; *see also Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014). Instead, Plaintiff must allege that the defendant performed intentional acts that had the "very purpose of" causing or were "calculated to cause injury to the plaintiff in the forum state." *Schroll v. Plunkett*, 760 F. Supp. 1385, 1388 (D. Or. 1991) *aff'd*, 932 F.2d 973 (9th Cir. 1991). Here, Plaintiff has not alleged so in his Amended Complaint or in his self-serving declaration.[21]

Further, Plaintiff has not alleged or claimed that WWE perpetuated some wrong during the alleged telephonic "negotiations" in the 1980's, and a mere telephone call is insufficient to haul a defendant into court. *See Fujitsu-ICL Systems, Inc. v. Efmark Serv. Co. of Ill., Inc.*, No. 00-CV-0777 W(LSP), 2000 WL 1409760, at *4–5 (S.D. Cal. June 29, 2000). Contrary to Plaintiff's argument, merely contracting with a resident of the forum state is also insufficient to show purposeful availment. *See Dynamic Software Servs.*, 2014 WL 3373924, at *8 (courts do not find purposeful availment "[w]here the defendant does little more than sign a single, short-term contract with the plaintiff"); *Ocean SW, Inc.*, 2015 WL 2180492, at *7; *Advice Co.*, 2009 WL 210503, at *9. Similarly, Plaintiff cannot in good faith claim that a letter that WWE sent him in 2014 – which informed him of substance abuse treatment programs that WWE offers to its former talent with prior booking contracts – satisfies the first prong of the specific jurisdiction test. Far from harming Plaintiff, the letter was intended to confer a benefit upon him. In any event, the letter does not establish jurisdiction because it is unrelated to Plaintiff's claims. *See Ocean SW, Inc.*, 2015 WL 2180492, at *8.

Nor has Plaintiff established that his causes of action arise from WWE's purported in-state actions. Nothing in Plaintiff's Complaint, nor in any of the conclusory statements in his

---

[21]    The Court in the *Yahoo, Inc. v. La Ligue Contre* case cited by Plaintiff found purposeful contact through defendants' suit that sought "orders directing [plaintiff] to perform significant acts in California," which also caused financial penalties to plaintiff at its headquarters in California. 433 F.3d 1199, 1209 (9th Cir. 2006). Nothing of the sort is alleged here.

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

declaration, set forth any evidence that his claims arise out of or are related to WWE's supposed activities in Oregon. Plaintiff baldly contends that he would not have been victimized by his alleged concussions and WWE's alleged concealment of the effects of his concussions, had he not wrestled in Oregon. *See* Opposition at 31. This argument is not supported even by the most generous reading of his self-serving declaration because Plaintiff does not anywhere allege that he sustained any concussion while wrestling for WWE in Oregon or that the purported "blows to the head" suffered in Oregon had any causal nexus with his alleged injuries, such that the action could be deemed to arise from any act that took place in Oregon. *See Ajinomoto N. Am., Inc. v. Pine Valley, Inc.*, No. 3:14-cv-00293-BR, 2014 WL 3349649, at *6 (D. Or. July 8, 2014).

Even if WWE purposefully engaged in forum-related activity (which it did not), and even if Plaintiff's claims arose out of that activity in Oregon (which they do not), the Court may only exercise jurisdiction over WWE if doing so would be reasonable. The exercise of jurisdiction would be unfair and unreasonable in this case because: (1) WWE has minimally interjected in Oregon's affairs and has no presence in Oregon; (2) WWE would be substantially burdened by defending a lawsuit in Oregon, given that it is incorporated in Delaware, it is headquartered in Connecticut, and most of its witnesses work or reside in Connecticut; (3) Connecticut has a strong interest in adjudicating a dispute involving its resident; (4) Plaintiff has an alternative available forum in Connecticut and this dispute would be resolved more efficiently in Connecticut; and (5) a substantial majority of putative members of the class are subject to forum selection clauses requiring this action to be litigated in Connecticut. *See* Memorandum at 33-34; Langham Aff. at ¶¶ 15-17.

Plaintiff has no valid response to these facts and simply reverts to his pattern of misstating the law. Plaintiff erroneously contends that WWE is not burdened by defending this case in Oregon because WWE has the necessary financial means to afford it. A defendant's financial means is entirely irrelevant in this analysis. *Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1444 (9th Cir. 1987) ("[T]he law of personal jurisdiction

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200

is 'asymetrical' [and] [t]he primary concern is for the defendant's burden.").[22]  Plaintiff further

claims that Oregon has an interest in protecting its citizens.  However, that interest is weakened

by the fact that (1) WWE did not purposefully direct any conduct in Oregon, and (2)

Connecticut's strong competing interest in adjudicating a case involving its resident along with

the other copy-cat case brought by Plaintiff's counsel currently pending in Connecticut.

Lastly, Plaintiff concedes that some of the evidence and the witnesses are located in

Connecticut, but argues that "this District will supply an effective forum for deciding [his]

claims."  Plaintiff misses the point entirely – forum efficiency is determined only "by looking at

where the witnesses and the evidence are likely to be located."  *See Terracom v. Valley Nat'l*

*Bank*, 49 F.3d 555, 561 (9th Cir. 1995).  If not dismissed, litigating in Connecticut will be more

efficient and less expensive for all parties because the sources of proof are located there.  *See*

*Schroll*, 760 F. Supp. at 1389.  Similarly, there will be significant cost and time savings because

the Connecticut court will be able to oversee (and possibly consolidate) this case together with

the identical Singleton Action currently pending before it.  Because the copy-cat cases filed by

Plaintiff's counsel are likely to be transferred to Connecticut, having one court oversee all such

cases will significantly preserve judicial and party resources.  Exercising jurisdiction over WWE

here would be unreasonable and unfair, and this action should be dismissed.

Plaintiff does not contest that this case should be dismissed pursuant to Rule 12(b)(5) of

the Federal Rules of Civil Procedure for insufficient service of process, *see* Memorandum at 35,

and therefore Plaintiff has waived any defense to this claim by failing to address it in his

Opposition.  *See J & J Sports Prods., Inc. v. Rivera*, No. 6:13-cv-01996-AA, 2014 WL 2809844,

at *6 (D. Or. June 18, 2014).  For this reason alone, the case should be dismissed.

---

[22]     Plaintiff egregiously mis-cites *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1116 (9th
Cir. 2002) for the proposition that a defendant's financial means makes superfluous the burden
considerations.  *See* Opposition at 32.  *Dole Food Co., Inc.* does not discuss the defendant's
financial means, but instead addresses plaintiff's financial condition, noting that "the plaintiff's
convenience is not of paramount importance."  *Dole Food Co., Inc.*, 303 F.3d at 1116.

PAGE 34 – WWE'S REPLY IN SUPPORT OF MOTION TO DISMISS

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons stated in WWE's opening memorandum, Haynes' Amended Complaint should be dismissed with prejudice.

DATED: May 28, 2015.

K&L GATES LLP

By: /s/ B. John Casey

B. John Casey, OSB #120025
john.casey@klgates.com
Jerry S. McDevitt  (*pro hac vice*)
jerry.mcdevitt@klgates.com
Curtis B. Krasik  (*pro hac vice*)
curtis.krasik@klgates.com

*Attorneys for Defendant World
Wrestling Entertainment, Inc.*

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR  97258
TELEPHONE: (503) 228-3200

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of May, 2015, I caused to be served a copy of the foregoing DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS on the following parties via the Court's CM/ECF System:

Steve D. Larson
Joshua L. Ross
Stoll Stoll Berne Lokting & Shlachter P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Email: slarson@stollberne.com; jross@stollberne.com
        Attorneys for Plaintiff William Albert Haynes III

Pro Hac Vice admitted attorneys for Plaintiffs:

| | |
|---|---|
| Konstantine Kyros<br>Kyros Law Offices, PC<br>kon@kyroslaw.com | Taylor Asen<br>Cuneo Gilbert & LaDuca, LLP<br>tasen@cuneolaw.com |
| Erica Mirabella<br>Mirabella LLC<br>erica@mirabellaLLC.com | Scott Moriarty<br>Lockridge Grindal Nauen PLLP<br>samoriarity@locklaw.com |
| Brendan Thompson<br>Cuneo Gilbert & LaDuca, LLP<br>brendant@cuneolaw.com | Robert Shelquist<br>Lockridge Grindal Nauen PLLP<br>rkshelquist@locklaw.com |
| Charles LaDuca<br>Cuneo Gilbert & LaDuca, LLP<br>charles@cuneolaw.com | |

DATED this 28th day of May, 2015.


/s/ B. John Casey
B. John Casey

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97258
TELEPHONE: (503) 228-3200